# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Books-A-Million, Inc., Appellant,

v.

South Carolina Department of Revenue, Respondent.

Appellate Case No. 2017-001519

Appeal From The Administrative Law Court
John D. McLeod, Administrative Law Judge

Opinion No. Op. 5721
Heard March 9, 2020 – Filed April 29, 2020

**AFFIRMED**

Burnet Rhett Maybank, III, and James Peter Rourke, of
Nexsen Pruet, LLC, of Columbia, for Appellant.

Sean Gordon Ryan and Adam J. Neil, of Columbia, for
Respondent.

**THOMAS, J.:** In this case arising from a sales tax audit by the South Carolina
Department of Revenue (SCDOR), Books-A-Million, Inc. (BAM) appeals from the
order of the Administrative Law Court (ALC) that upheld SCDOR's assessment of
taxes, penalties, and interest against BAM for BAM's failure to include sales of the
Millionaire's Club Memberships (Club Memberships) in BAM's gross proceeds of
sales. BAM argues the ALC erred in finding (1) the amounts collected by BAM
for Club Memberships are subject to sales tax; (2) renewals of Club Memberships
are subject to sales tax; and (3) the statutes are not ambiguous. We affirm.

**FACTS**

BAM operates a discount book retail business headquartered in Birmingham, Alabama. BAM sells books, magazines, collectible supplies, cards, and other gifts in retail stores throughout the country and online. BAM operates thirteen retail locations in South Carolina. Customers pay a $25 annual fee (Membership Fee) to belong to the Millionaire's Club (the Club). Customers can pay the Membership Fee separately or along with other store purchases. Club Memberships expire one year from the date of payment of the Membership Fee, unless the membership is automatically renewed. Club Memberships automatically renew each year for a one-year period unless customers affirmatively opt out of the automatic renewal or the Club Membership is otherwise cancelled or terminated. If customers do not opt out, BAM bills the annual Membership Fee to the credit or debit card provided when the customer initially enrolled in the Club. BAM does not charge sales tax on the cost of the Membership Fee.

On December 11, 2014, SCDOR informed BAM by letter that its sales and use tax returns for January 1, 2012, to August 31, 2015, were selected for audit. BAM provided SCDOR copies of its income statements for the audited periods. SCDOR's auditor compared BAM's gross proceeds of sales from the income statements to the gross proceeds of sales reported on BAM's sales and use tax returns.

During the audit, SCDOR discovered BAM was not charging sales tax on the cost of Membership Fees. Thus, on September 16, 2015, SCDOR issued a Proposed Notice of Assessment (PNOA) to BAM in the amount of $242,076.97, due for sales tax on the cost of Membership Fees for the audited periods (including $15,703.13 in interest and $63.14 in penalties). The amounts listed in the PNOA resulted from adjustments caused by applying sales tax to the cost of Membership Fees. BAM timely objected to the PNOA by letter dated December 14, 2015, and SCDOR issued its determination on the matter on March 15, 2016.

BAM requested a contested case hearing before the ALC, challenging SCDOR's final determination. The sole issue before the ALC was whether the proceeds from BAM's South Carolina sales of Club Memberships were subject to sales taxes and should have been included in BAM's gross proceeds of sales. Both parties filed motions for summary judgment, agreeing there were no material facts in dispute but disagreeing as to the application of the law to the undisputed facts. Prior to the hearing before the ALC, the parties filed stipulations of fact.

A hearing was held before the ALC on May 9, 2017.  The ALC issued its order on June 1, 2017; however, on June 6, 2017, the ALC issued an order vacating its June 1 order and amending its order granting SCDOR's motion for summary judgment. BAM filed a motion for reconsideration, which was denied.  This appeal follows.

**STANDARD OF REVIEW**

The Administrative Procedures Act provides our standard of review in an appeal from the ALC.  *Schwiers v. S.C. Dep't of Health & Envtl. Control*, 429 S.C. 43, 48, 837 S.E.2d 730, 733 (Ct. App. 2019).  Section § 1-23-610(B) of the South Carolina Code provides this court must confine our analysis to the record, and we may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

> (a) in violation of constitutional or statutory provisions;

> (b) in excess of the statutory authority of the agency;

> (c) made upon unlawful procedure;

> (d) affected by other error of law;

> (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

> (f) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.

S.C. Code Ann. § 1-23-610(B) (Supp. 2019).  "In determining whether the decision of the ALC was supported by substantial evidence, a reviewing court 'need only find, looking at the entire record on appeal, evidence from which reasonable minds could reach the same conclusion as the ALC.'"  *Schwiers*, 429 S.C. at 49, 837 S.E.2d at 733 (quoting *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 28, 766 S.E.2d 707, 715 (2014)).  "However, the [c]ourt may reverse the decision of ALC where it is in violation of a statutory provision or it is affected by an error of law."  *Kiawah Dev. Partners, II*, 411 S.C. at 28, 766 S.E.2d at 715.

**LAW/ANALYSIS**

**I.     Club Membership Sales**

BAM argues the ALC erred in finding the amounts collected by BAM for Club Memberships are subject to sales tax.  We disagree.

Under South Carolina law, "[a] sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person engaged or continuing within this State in the business of selling tangible personal property at retail."  S.C. Code Ann. § 12-36-910(A) (2014).[1]  For sales and use tax purposes, the term "person" "includes any individual, firm, partnership, limited liability company, association, corporation, receiver, trustee, any group or combination acting as a unit, the State, any state agency, any instrumentality, authority, political subdivision, or municipality."  S.C. Code Ann. § 12-36-30 (2014).  "Gross proceeds of sales, or any similar term, means the value proceeding or accruing from the sale . . . of tangible personal property."  S.C. Code Ann. § 12-36-90 (2014).  "Tangible personal property" is defined as "personal property which may be seen, weighed, measured, felt, touched, or which is in any other manner perceptible to the senses. It also includes services and intangibles . . . the sale or use of which is subject to tax under this chapter . . . ."  S.C. Code Ann. § 12-36-60 (2014).  "It is presumed that all gross proceeds are subject to the tax until the contrary is established.  The burden of proof that the sale of tangible personal property is not a sale at retail is on the seller."  S.C. Code Ann. § 12-36-950 (2014).

When "an agency charged with administering a statute or regulation has interpreted the statute or regulation, courts, including the ALC, will defer to the agency's interpretation absent compelling reasons."  *Kiawah Dev. Partners, II*, 411 S.C. at 34, 766 S.E.2d at 718.  This court defers to an agency's interpretation of a statute "unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'"  *Id.* at 34-35, 766 S.E.2d at 718 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

At the hearing before the ALC, SCDOR argued a plain reading of the statute demonstrated that all persons engaged in the sale of tangible personal property at retail are liable for sales tax on their gross proceeds of sales.  BAM argued sections

---

[1]  Section 12-36-1110 imposed an additional one percent sales tax as of June 1, 2007.  S.C. Code Ann. § 12-36-1110 (2014).

12-36-910(A) and 12-36-90 only imposed a sales tax on the gross proceeds of the sale of tangible personal property.

The ALC found BAM's argument failed to apply the plain meaning rule. Instead, the ALC found BAM's reading of the statute required the deletion of the words "persons engaged in the business of." Also, it found BAM's reading required deleting the phrase "proceeding or accruing" from the statute. The ALC stated, "A reading of a statute that requires eliminating words within the statute is not reasonable and does not comport with the plain meaning rule." The ALC further stated:

> If [BAM] . . . were to stop selling tangible personal property, its [Club Membership] would not be able to survive as the [Club Membership] only exists as a means to provide discounts on BAM's sales of tangible personal property. *Because the [Club Membership] cannot exist without [BAM] offering tangible personal property for sale, I conclude [BAM's Club Membership] and sales of tangible personal property are inseparable.* Thus, I conclude [BAM] is in the business of selling tangible personal property at retail, and [BAM's] business is subject to South Carolina sales tax. (Emphasis added.).

The ALC continued:

> When applying the plain meaning rule to the words in the statute, it is clear that *the statute is broad and encompasses the total value of a sale, not simply the amount paid for tangible personal property*. Moreover, a review of the case law demonstrates that gross proceeds of sales can include the value of services and intangibles that are derived from the sale of tangible personal property. . . . Therefore, I agree with [SCDOR] and conclude that gross proceeds of sales includes all value that comes from or is direct result of the sale, lease, or rental of tangible personal property, including proceeds from fees related to incidental services, intangibles, or other benefits. (Emphasis added.).

The ALC considered two South Carolina cases in making its decision.  In *Travelscape, LLC v. South Carolina Department of Revenue*, 391 S.C. 89, 97, 705 S.E.2d 28, 32 (2011), Travelscape contended it was not required to pay sales tax on the service and facilitation fees it retained from online hotel reservations because such fees were "derived from" the services it provided, not from the rental charge for the hotel room.  Our supreme court found the fees charged by Travelscape for its services were subject to sales tax under the plain language of section 12-36-920(A) as gross proceeds because the service was merely incidental to the purchase of the accommodations and the cost of services is specifically included in the definition of gross proceeds of sales.  *Id.* at 98, 705 S.E.2d at 33.

In *Meyers Arnold, Inc. v. South Carolina Tax Commission*, 285 S.C. 303, 307, 328 S.E.2d 920, 923 (Ct. App. 1985), the issue was whether a layaway fee was part of the gross proceeds of sales.  The court reasoned that "[b]ut for the lay away [sic] sales, Meyers Arnold would not receive the lay away [sic] fees.  The fees are obviously charged for the service rendered in making lay away [sic] sales." *Id.* Thus, this court held the layaway fees were part of the gross proceeds of sales and subject to the sales tax.  *Id.*

The ALC also considered two Administrative Law Court cases in making its decision.  In *Textile Restoration Services, Inc. v. South Carolina Department of Revenue*, 2015 WL 7443800, at *4 (S.C. Admin. Law Ct. Nov. 12, 2015), the court found SCDOR properly included charges for repairing, altering, storing, pick-up, and delivery of items incident to the dry cleaning service in the taxpayer's gross proceeds of sales.  In *Tronco's Catering, Inc. v. South Carolina Department of Revenue*, 2010 WL 5781622, at *3 (S.C. Admin. Law Ct. Apr. 12, 2010), the court held "the value of the sale of catered meals includes service, labor, and room charges [because] [s]uch charges are incidental to and merely enhance the value of the sale of catered meals."  "The statute further expressly states that the value of the sale must include costs for materials, labor, service, transportation, or for any other expense." *Id.*  "When the terms of a statute are clear and unambiguous, as they are here, there is no room for construction and the terms must be given their literal meaning." *Id.*

The ALC in this case concluded, "South Carolina case law demonstrates that gross proceeds of sales includes all value that comes from or is a direct result of the sale, lease, or rental of tangible personal property."  Its order stated:

> Customers pay the Membership Fee to obtain discounts
> and free shipping on their purchases of tangible personal

property.  Thus, the Membership Fee is a direct result of the sale of tangible personal property.  But for [BAM's] sale of tangible personal property, [BAM] would not be able to sell [Club Memberships] and, therefore, would not collect Membership Fees.  The Membership Fees are payment for services or benefits that are incident to the sale of tangible personal property.  Moreover, the Membership Fees are inextricably linked to, and incapable of being separated from, the sale of tangible personal property.

Thus, the ALC held BAM's Club Membership Fees are includable in BAM's gross proceeds of sales and are subject to sales tax.

On appeal, BAM argues under the plain meaning of section 12-36-910, the Membership Fees collected by BAM are not subject to sales tax because Club Memberships are not tangible personal property under section 12-36-60, and therefore the Membership Fees cannot constitute gross proceeds of sales under section 12-36-90.  BAM argues this case is distinguishable from *Meyers Arnold* and *Travelscape*:

> The facts in *Meyers Arnold* and *Travelscape* . . . both involve the imposition of sales tax on fees charged by a retailer providing a service where the fees were inextricably intertwined with the sale of specific tangible personal property or accommodations.  In *Meyers Arnold*, the customer could not purchase the lay away [sic] merchandise without paying the subject fee.  Likewise, in *Travelscape*, the customer could not purchase the accommodation without paying the fee.  The charge for layaway/service fee in each case occurs only after the purchase of the underlying tangible personal property.  In addition, neither customer would only pay the fee—presumably, neither taxpayer could charge only the fee, since that fee is so inextricably linked to the underlying purchase of tangible personal property or services.

BAM also cites to other states' cases interpreting their tax statutes in support of its argument. One of these cases is *Barnes & Noble Superstores, Inc. v. Huddleston*, 1996 WL 596955 (Tenn. Ct. App. Oct. 18, 1996). In that case, the Tennessee Commissioner of Revenue appealed from the trial court's grant of summary judgment in favor of Barnes & Noble. *Id.* at *1. The primary issue on appeal was whether Barnes & Noble's sale of $10 annual membership cards, entitling the members to merchandise discounts, was subject to Tennessee sales tax. *Id.* The Commissioner's position was that the cards themselves were tangible personal property subject to sales tax, and payment of the $10 fee constituted prepayment for merchandise because Barnes & Noble customers were in effect applying $10 towards the later purchase of inventory. *Id.* At that time, Tennessee statute section 67-6-102(28) (1994) defined "tangible personal property" as personal property that "may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses." *Id.* at *2. The court looked to the "language of the statute in order to ascertain and effectuate the intent of the General Assembly," and noted "[i]t is a general rule of construction that sales and use taxes will not be extended by implication beyond the clear import of the language used and will not be enlarged to embrace matters not specifically named." *Id.* The court then held the membership sales were not subject to taxation because the "true object of the subject transactions between [Barnes & Noble] and its customers is to bestow upon club members the intangible right to receive a discount on merchandise." *Id.* Further, "[t]he membership card is merely an indicia of that intangible right and incidentally aids in the exercise of that right." *Id.*

However, this court does not have to follow other states' interpretations of their tax laws in interpreting our own tax laws. *See State Farm Mut. Auto. Ins. Co. v. Goyeneche*, 429 S.C. 211, 224, 837 S.E.2d 910, 917 (Ct. App. 2019) ("When there is no South Carolina case directly on point, our courts may look to persuasive authority from other jurisdictions."); *S.C. State Highway Dep't v. Wilson*, 254 S.C. 360, 366, 175 S.E.2d 391, 395 (1970) ("The decisions of courts from other jurisdictions are, of course, only persuasive authority."); *cf. Widenhouse v. Colson*, 405 S.C. 55, 59 n.2, 747 S.E.2d 188, 191 n.2 (2013) (noting a state is not "required to defer to another state's judgment regarding 'the disposition or devolution of realty' in the forum state" (quoting *Williams v. State of North Carolina*, 317 U.S. 287, 294 n.5 (1942)), or required "to apply the law of another state in an action in its own courts" (citing *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 436-37 (1943))).

BAM also argues its Club Membership is similar to the purchase of gift cards and membership-only warehouses, which are not subject to sales tax in South Carolina.

BAM points out SCDOR has determined the sale of prepaid telephone cards are not subject to sales tax at the time of sale if they are for use with a landline; however, they are subject to sales tax at the time of sale if they are for use with a mobile phone. S.C. Rev. Rul. 04-4. In a 2004 ruling, the SCDOR held:

> The sale or recharge at retail of a *prepaid telephone calling card* . . . for use in making local, long distance, or international telephone calls, that can be used to make a call from a *land-based phone*, is not subject to sales tax since this transaction is not a sale of tangible personal property. The transaction is merely the exchange of money for an intangible evidence of debt—a future right to telephone service. *The taxable transaction takes place when the telephone calling card is used.* . . . The provider of the local telephone call is liable for the 5% sales tax on local calls made with the calling card.
>
> . . .
>
> The sale or recharge at retail of a *prepaid telephone calling card* for use in making local, long distance, or international telephone calls . . . that can only be used with a *wireless phone* or other wireless device, *is subject to South Carolina sales tax at the time of purchase*.

S.C. Rev. Rul. 04-4 (emphasis added). That ruling further states: "Other similar nontaxable transactions include the sale of gift certificates or traveler's checks. The taxable transaction occurs at the time the gift certificate or traveler's check is redeemed." BAM cites to SCDOR's South Carolina Sales and Use Tax Manual (2017 Ed.), chapter 6, page 9, which provides that "[m]embership fees charged by a membership-only warehouse offering a selection of brand-name merchandise to business owners and others where all membership types receive the same benefits" are not subject to the sales tax or use tax. The manual states in a footnote to the membership-only warehouse exemption that

> A membership fee would be includable in gross proceeds and subject to the tax if the membership fee is the sales price for the tangible personal property. For example, if a direct mail movie rental company charged an annual or month[ly] fee to receive movies for short term use of

> movies and no other charges are paid by the customers to receive the movies, then the annual or monthly fee is the sales price of the tangible personal property and subject to the tax.

After reviewing the record, we find the decision of the ALC was supported by substantial evidence. South Carolina case law provides that gross proceeds of sales includes all value that comes from or is a direct result of the sale of tangible personal property. The Membership Fee is a direct result of the sale of tangible personal property because BAM would not be able to sell Club Memberships but for BAM's sale of tangible personal property. Thus, the ALC did not err in finding the amounts collected by BAM for Club Memberships are subject to sales tax.

## II.    Club Membership Renewals

BAM argues the ALC erred in finding renewals of Club Memberships are subject to sales tax. We disagree.

Because we find the ALC correctly determined sales of Club Memberships are subject to sales tax, we also find the ALC correctly determined renewals of Club Memberships are also subject to sales tax. *See Hagood v. Sommerville*, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (declining to address an issue when the resolution of a prior issue is dispositive).

## III.    Ambiguous Statutes

BAM argues the ALC erred in finding the statutes are not ambiguous. We disagree.

"The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature." *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). Courts "must give the words found in the statute their 'plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *CFRE, LLC v. Greenville Cty. Assessor*, 395 S.C. 67, 74, 716 S.E.2d 877, 881 (2011) (quoting *Sloan*, 371 S.C. at 499, 640 S.E.2d at 459). "Thus if the words are unambiguous, we must apply their literal meaning." *Id.* at 74, 716 S.E.2d at 459; *Beach v. Livingston*, 248 S.C. 135, 139, 149 S.E.2d 328, 330 (1966) ("The language of a tax statute must be given its plain ordinary meaning in the absence of an ambiguity therein."). "The interpretation of a statute is a question of

law reviewed de novo." *S.C. Dep't of Transp. v. Powell*, 424 S.C. 206, 210, 818 S.E.2d 433, 435 (2018).

At the hearing before the ALC, BAM argued sections 12-36-910(A) and 12-36-90 were ambiguous and should be construed in favor of the taxpayer. The ALC found BAM failed to point to any ambiguity in either section. Thus, the ALC concluded sections 12-36-910(A) and 12-36-90 were unambiguous, and the plain meaning rule applied. The ALC found the application of the plain meaning rule to the terms in the statutes at issue demonstrated the Membership Fees were includable in BAM's gross proceeds of sales and subject to sales tax.

On appeal, BAM again argues the statutes are ambiguous regarding whether optional membership fees are included in the sales tax base, and such ambiguity must be resolved in favor of the taxpayer.

S.C. Code Ann. § 12-36-910(A) (2014) states "[a] sales tax, equal to five percent of the gross proceeds of sales, is imposed upon every person engaged or continuing within this State in the business of selling tangible personal property at retail." S.C. Code Ann. § 12-36-90 (2014) provides "[g]ross proceeds of sales, or any similar term, means the value proceeding or accruing from the sale, lease, or rental of tangible personal property."

Based on our review, we find the language of the statutes is not ambiguous, and the ALC's reading of the statutes was correct and consistent with the intent of the legislature. Thus, the ALC did not err in finding the statutes are not ambiguous.

**CONCLUSION**

Accordingly, the decision of the ALC is

**AFFIRMED.**

**HUFF and MCDONALD, JJ., concur.**